IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN re MICRON TECHNOLOGY, INC., | ) | |
| SECURITIES LITIGATION, | ) | Case No. CV-06-85-S-BLW |
| | ) | (Lead Case) |
| ——————————————— | ) | |
| | ) | Consolidated with: |
| This Document Relates to: | ) | CV-06-92-S-BLW |
| | ) | CV-06-105-S-BLW |
| ALL ACTIONS. | ) | CV-06-124-S-BLW |
| ——————————————— | ) | CV-06-145-S-BLW |

## MEMORANDUM DECISION AND ORDER

## INTRODUCTION

The Court has before it Defendant's Motion for Partial Judgment on the Pleadings (Docket No. 124). The Court has determined that the decisional process on the motion would not be significantly aided by oral argument. Therefore, the Court will address the motion without a hearing.

## FACTUAL BACKGROUND

This § 10(b) class action was filed by Micron shareholders allegedly injured by Micron's participation in an illegal price-fixing conspiracy. Micron produced Dynamic Random Access Memory (DRAM) chips for use primarily in computers. DRAM was Micron's principal product, and thus Micron's stock price tracked closely with the price of DRAM.

**Memorandum Decision and Order – Page 1**

Plaintiffs complain that in 2001 Micron entered into a global price-fixing conspiracy to ensure high DRAM prices and high Micron stock prices. Even though computer demand was down in 2001, the prices for DRAM were rising rapidly. At the same time, Micron's Vice-President of Worldwide Marketing, Michael Sadler, and other Micron officials, issued public statements attributing high DRAM prices to market forces.

Plaintiffs allege that these statements were false because Micron officials knew it was illegal price-fixing, not market factors, that led to increasing DRAM prices. Plaintiffs allege that Micron's deception had the desired effect; Micron's stock price increased.

On June 17, 2002, the U.S. Department of Justice (DOJ) issued a federal grand jury subpoena to Micron, seeking documents relating to communications between DRAM manufacturers regarding the pricing and sales of DRAM chips. DOJ also issued subpoenas to the other two largest global manufacturers of DRAM, Samsung and Infineon Technologies.

A DOJ spokeswoman refused to provide any details beyond the fact that the DOJ was investigating the computer memory chip industry. However, press accounts included a quote from a federal official, speaking on condition of anonymity, who confirmed that the subpoenas were part of an ongoing criminal

**Memorandum Decision and Order – Page 2**

investigation.  Micron publically disclosed the service of the subpoena, and announced that it would cooperate with the DOJ, although it denied that it violated antitrust laws.

Within the next three months, sixteen antitrust actions were filed against Micron and other producers.  These suits were filed by DRAM purchasers who claimed they were victims of the high prices caused by the price-fixing.  The complaints allege that in the fall of 2001, Micron and the other defendants entered into a secret agreement to reduce supply by 20%, resulting in price hikes.

By October 30, 2002, there were twenty-three such suits.  While Micron's stock price was $48.83 per share in March of 2001, it had dropped to $6.76 by the close of the class period, February 13, 2003.

On December 17, 2003, the DOJ issued a press release revealing in detail a Micron manager's obstruction of justice.  On September 15, 2004, Infineon Technologies pled guilty to criminal charges of illegal DRAM price-fixing between 1999 and 2002.  On November 11, 2004, Micron's CEO Steve Appleton publically admitted for the first time that the DOJ investigation revealed evidence of DRAM price-fixing by Micron employees and its competitors.  Two days later, the Idaho Statesman newspaper published an article revealing that Micron had signed an agreement with DOJ whereby Micron would participate in the DOJ's

**Memorandum Decision and Order – Page 3**

Corporate Leniency Policy, which provides that in exchange for Micron's full cooperation, it would not be subject to any prosecution or penalty.

## PROCEDURAL HISTORY

On September 7, 2006, Defendants moved to dismiss Plaintiffs' claims on a number of grounds. Among them was an argument that Plaintiffs failed to meet the prevailing standard for pleading scheme liability, as articulated by the Ninth Circuit in *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040 (9th Cir. 2006). *Simpson* required a securities plaintiff to plead facts that, if proven at trial, would establish that each defendant "engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson*, 452 F.3d at 1048. On February 21, 2007, this Court denied Defendants' motion in its entirety. With respect to the *Simpson* test, the Court determined that Plaintiffs met that test by alleging a close connection between DRAM prices and Micron's stock price, so that Micron's false statements and price-fixing scheme would artificially raise DRAM prices, attracting investors who would bid up the price of Micron shares.

Defendants now contend that the Supreme Court vacated *Simpson* in *Avis Budget Group, Inc. v. Cal. State Teachers' Retirement System*, 128 S. Ct. 1119 (2008), and that *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,

**Memorandum Decision and Order – Page 4**

128 S.Ct. 761 (2008) now provides the standard for determining scheme liability.

Under *Stoneridge*, Defendants contend that Plaintiffs' claims fail as a matter of

law.

## ANALYSIS

### I.    Standard of Review

The standard for a rule 12(c) motion for judgment on the pleadings is

functionally the same as that of a Rule 12(b)(6) motion to dismiss.  *See Hustler*

*Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1988); see also 5A Wright & Miller,

Federal Practice and Procedure § 1368 at 591 (Supp.2002).  The Court must

assume the truth of all well-pleaded allegations of material fact and construe them

in the light most favorable to the plaintiffs.  *See Manshardt v. Federal Judicial*

*Qualifications Comm.*, 408 F.3d 1154, 1156 (9th Cir. 2005).  Judgment on the

pleadings is proper if it appears that the plaintiffs can prove no set of facts that

would entitle them to relief.  *Id.*

### II.    Defendants' Motion for Judgment on the Pleadings

Section 10(b) of the Securities Exchange Act of 1934 makes it "unlawful for

any person . . . [t]o use or employ, in connection with the purchase and sale of any

security . . . any manipulative or deceptive device or contrivance in contravention"

of any rule prescribed by the SEC. 15 U.S.C. § 78j.  Pursuant to this section, the

**Memorandum Decision and Order – Page 5**

SEC promulgated Rule 10b-5, which states as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR § 240.10b-5.

Here, Plaintiffs assert claims under all three subsections of Rule 10b-5. Claims under subsections (a) and (c) are generally treated together as a single claim for scheme liability. *See e.g., Stoneridge*, 128 S. Ct. at 768. The scheme claim is at issue in the pending motion. Micron essentially contends that under *Stoneridge*, "[r]eliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Stoneridge*, 128 S. Ct. at 769. Micron further contends that there can be no reliance, and hence no scheme claim, where "[n]o member of the investing public had knowledge, either actual or presumed, of [the] deceptive acts during the relevant times." *Id.* And finally,

**Memorandum Decision and Order – Page 6**

Micron cites *Stoneridge* for the assertion that knowledge cannot be "presumed" if the "deceptive acts" constituting the alleged scheme "were not communicated to the public." *Id.*

The problem with Micron's reliance on *Stoneridge* is that *Stoneridge* addressed liability for secondary, not primary, actors. In this case, it appears undisputed that the alleged deceptive acts constituting Plaintiffs' scheme claim are efforts between Micron and its competitors to fix the contract price of DRAM. Although Plaintiffs do not claim that they had actual knowledge of the alleged conduct during the relevant time period, they suggest that the alleged conduct was otherwise communicated to the public during the class period. Specifically, Plaintiffs contend that they have alleged public disclosure of Defendants' deception by asserting that Micron itself agreed with its competitor DRAM manufacturers to artificially inflate DRAM price levels, and that pricing information became public as reflected in Micron's stock price.

Under these allegations, the holding in *Stoneridge* is inapplicable. *Stoneridge* involved a motion to dismiss a Rule 10b-5 class action that was originally filed against defendant Charter Communications and two of Charter's suppliers and customers. The Supreme Court's decision in *Stoneridge* only concerned liability for the two secondary actors. There is no discussion – indeed,

**Memorandum Decision and Order – Page 7**

no intimation – that the Court would have extended its holding to Charter as the author and beneficiary of the fraudulent scheme.   In the end, the Court concluded that the plaintiffs failed to show reliance by Charter investors on any statements made by the secondary defendants.  *Stoneridge*, 128 S. Ct. at 769.  Furthermore, the Supreme Court noted that imposing liability on such secondary actors would potentially create a cause of action against the entire marketplace.  *Id*. at 771. Thus, the Court rejected the plaintiffs' attempt to stretch federal securities liability to secondary actors.[1]

At its core, the decision in *Stoneridge* was little more than a restatement of the Court's holding fourteen years earlier in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994), that there is no private right of action against a secondary actor who allegedly aided and abetted in the execution of a fraudulent scheme.   The Court in *Stoneridge* simply addressed an attempt to exploit an ambiguity in the Central Bank opinion, which left open the possibility that secondary actors could be liable for employing a fraudulent scheme upon which an investor relies.  *Id.* at 191.  The Court foreclosed that opening by

---

[1] The literature written in response to *Stoneridge* – including two recent articles in an edition of a legal journal devoted largely to its impact on securities litigation – support the Court's interpretation of *Stoneridge*.  See e.g., Richard A. Booth, *The Future of Securities Litigation,* 4 J. Bus. & Tech. L. 129 (2009); Carl W. Hittinger & Jarod M. Bona, *The Diminishing Role of the Private Attorney General in Antitrust and Securities Class Action Cases Aided by the Supreme Court,*  4 J. Bus. & Tech. L. 167 (2009).

**Memorandum Decision and Order – Page 8**

requiring that plaintiffs prove all "elements or preconditions for liability" to recover from the secondary actors. *Stoneridge*, 128 S. Ct. at 769

Here, in contrast to the issue presented in *Stoneridge*, the defendants are not secondary actors – they are not Micron's customers and suppliers. Rather, the defendant is Micron itself. Thus, the Supreme Court's principal concern in *Stoneridge* – that the extension of securities liability to the conduct of secondary actors would provide a private cause of action against the entire marketplace in which the issuing company operates – is not a concern here. Accordingly, the Court will decline to conclude that *Stoneridge* warrants dismissal of Plaintiffs' claims in this case. [2]

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED THAT Defendant's Motion for Partial Judgment on the Pleadings (Docket No. 124) shall be, and the same is hereby, DENIED.

---

[2] In reaching this conclusion, I am aware of broad language employed by the Supreme Court which would seemingly have application to primary, as well as secondary, defendants, and has led at least one other court to reach a conclusion contrary to my decision here. *See In re Nature's Sunshine Products Securities Litigation*, 2008 WL 4442150 (D. Utah, Sept. 23, 2008). However, after reviewing the *Stoneridge* decision carefully, I am persuaded that such language is dicta. I am also persuaded that if the motion to dismiss at issue in *Stoneridge*, had involved Charter Communications, as well as the secondary defendants, the Court would not have attempted to extend its rationale to Charter as the author and beneficiary of the fraudulent scheme.

**Memorandum Decision and Order – Page 9**

IT IS FURTHER ORDERED that Plaintiffs' unopposed Motion for Leave to

Amend Amended Complaint for Violation of the Federal Securities Laws (Docket

No. 134) shall be, and the same is hereby, GRANTED.

DATED:  **February 23, 2009**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 10**