RICHARD H. GREENER, ISB #1191
**GREENER BURKE SHOEMAKER P.A.**
815 W. Washington Street
Boise, ID 83702
Telephone:     208/319-2600
Facsimile:     208/319-2601
Email:         rgreener@greenerlaw.com

BARRY M. KAPLAN (*admitted pro hac vice*)
DOUGLAS W. GREENE (*admitted pro hac vice*)
DAVID L. LANSKY (*admitted pro hac vice*)
**WILSON SONSINI GOODRICH &**
    **ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:     206/883-2500
Facsimile:     206/883-2699
Emails:        bkaplan@wsgr.com
               dgreene@wsgr.com
               dlansky@wsgr.com

Attorneys for Defendants


# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO


| | |
|---|---|
| In re MICRON TECHNOLOGY, INC. SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates To:<br>ALL ACTIONS | CASE NO. CV-06-085-S-BLW<br>(Lead Case)<br><br>CLASS ACTION<br><br>DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING THE UNITED STATES SUPREME COURT'S DECISION IN *MERCK & CO., INC., ET AL V. REYNOLDS, ET AL.*<br><br>Judge: Hon. Lynn B. Winmill |

Defendants Micron Technology, Inc. ("Micron"), Steven Appleton, Wilbur Stover, and Michael Sadler (collectively "Defendants") respectfully move to stay all proceedings against them pending resolution of the United States Supreme Court's decision in *Merck & Co. v. Reynolds*, 129 S. Ct. 2432, 2009 WL 150620 (Aug. 10, 2009).

## INTRODUCTION

This Court should stay this case because in the coming months, the Supreme Court will resolve a split among the Circuits regarding a potentially dispositive issue: what triggers the statute of limitations on securities fraud claims. Plaintiffs filed their complaint on February 24, 2006, alleging that purchasers of Micron stock were injured by Micron's participation in an illegal price fixing conspiracy in 2001 and 2002. Defendants moved to dismiss Plaintiffs' Complaint based, among other things, on the statute of limitations. This Court denied Defendants' motion.

A claim for securities fraud must be brought no later than "2 years after the discovery of the facts constituting the violation[.]"[1]  28 U.S.C. § 1658.  Courts are divided as to what "discovery of the facts constituting the violation" means. Some hold that the statute of limitations begins to run as soon as enough facts become available to the public to put reasonable investors on inquiry notice that they might possess a securities fraud claim against the defendant, thus triggering the duty to conduct a reasonable investigation. *See, e.g.*, *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 177 (4th Cir. 2007). Others conclude that this is not sufficient, and that even when the plaintiff fails to undertake a reasonable investigation, the statute of limitations runs only when a reasonable investigation would have uncovered evidence that the defendants acted with intent to deceive investors, *i.e.*, scienter. In other words, the statute of limitations does not begin to run until an investor, without the benefit of investigation, receives

---

[1] In relevant part, 28 USC §1658 provides: "[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of:  (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such a violation."

evidence that the defendant acted with scienter.  *See, e.g.*, *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litig.*, 543 F.3d 150 (3d Cir. 2008), *cert. granted*, 129 S. Ct. 2432 (2009).

This Court adopted the latter position in denying Defendants' motion to dismiss.  Thus, while the Court held that Plaintiffs were on inquiry notice of their claims and had a duty to conduct a reasonable investigation as of December 31, 2003 – well more than two years before they filed their February 26, 2006 Complaint – it also held that this fact was not sufficient to trigger the limitations period.  Rather, according to the Court, the limitations period could have begun only when there was sufficient evidence available to the public to permit Plaintiffs to allege facts supporting a strong inference that Defendants intended to mislead Micron investors.  The Court did not believe sufficient facts existed in the record prior to discovery to permit this finding as a matter of law, and thus denied the motion to dismiss.[2]

During 2009 – well after this Court's ruling – the United States Supreme Court undertook to resolve the circuit split by granting *certiorari* as to the Third Circuit's decision in *Merck*.  Specifically, the Supreme Court agreed to decide whether the statute of limitations is triggered by the duty to investigate, or whether evidence of scienter must also be available before the statute of limitations will begin to run.[3]  Thus, the Supreme Court will consider the validity of the legal standard this Court adopted in denying Defendants' motion to dismiss.  The Supreme Court recently scheduled oral arguments in *Merck* for November 30, 2009, and a decision will be handed down no later than the end of the Court's term in June 2010.

This Court should stay these proceedings until the Supreme Court issues its decision.  A court has the authority to stay proceedings to enhance efficiency and prevent prejudice to the parties.  A stay here would be the most efficient course because the Supreme Court's ruling in *Merck* may be dispositive.  As noted above, this Court has already found that Plaintiffs were on

---

[2] *In re Micron Technologies, Inc. Sec. Litig.,* No. CV-06-085, 2007 WL 576468, at *3 (D. Idaho Feb. 21, 2007).

[3] *See* 129 S. Ct. 2432 (granting petition for writ of certiorari); 2009 WL 133458, at *i (question presented set forth in petition for writ of certiorari).

inquiry notice of their claims more than two years before they filed their Complaint.  If the
Supreme Court determines that inquiry notice triggers the statute of limitations, Plaintiffs' claims
are time-barred and must be dismissed.  The parties are in an extremely time and resource
intensive phase of the case; they are in the midst of fact and expert discovery and will engage in
summary judgment briefing starting in early 2010.  There is a chance that the Supreme Court's
ruling in *Merck* will obviate the need for these expenditures, as well as the related expenditures
of judicial resources.

      Moreover, the balancing of the equities calls for a stay as well.  Proceeding now will
prejudice Defendants because they will incur extensive costs in completing discovery and
preparing summary judgment and other pretrial submissions that may be rendered unnecessary
by the Supreme Court's decision.  By contrast, Plaintiffs will suffer no prejudice from a stay.  At
most, the stay would be in place until the end of the Supreme Court's term in 2010.  Hence, the
case presents precisely the circumstances that call for a stay.[4]

## BACKGROUND

### A.      The Micron Technology, Inc. Securities Litigation

      On February 24, 2006, Plaintiffs filed their Complaint.  Relying on prior antitrust
proceedings, the Complaint alleged that Defendants engaged in a conspiracy to fix the prices of
Dynamic Random Access Memory ("DRAM").  *See* Amended Complaint for Violation of the
Federal Securities Laws ("Complaint" or "Comp."), ¶2.  Based on these allegations, Plaintiffs
assert that the Defendants are liable under Section 10(b) of the Securities and Exchange Act of
1934 (the "Exchange Act").  *Id.* ¶1.  Specifically, Plaintiffs claim that Defendants' class period
statements regarding DRAM prices and Micron's financial results were false and misleading
because those prices and financial results were artificially inflated through illegal price-fixing

---

[4] Defendants are mindful that the Court instructed the parties in its May 4, 2009 Order that
"no further continuances shall be granted."  However, Defendants are not requesting to simply
extend the deadlines in the case.  Instead, Defendants' request for a stay is based on unusual
circumstance that a central issue in this case – one that is potentially dispositive of the action – is
currently being considered by the United States Supreme Court.

agreements.  *Id.* ¶3.  In other words, they assert that Micron was able to artificially inflate its own stock price through illegal pricing agreements with other DRAM manufacturers.  *Id.* ¶¶ 8, 10.

On June 18, 2002, Micron announced that it had received a U.S. Department of Justice subpoena in connection with an investigation into potential price-fixing in the DRAM market. *Id.* ¶58.  A barrage of class action lawsuits immediately followed this disclosure, including sixteen antitrust cases filed between June 21, 2002 and September 19, 2002.  Plaintiffs did not file their securities fraud Complaint until Micron's February 26, 2006, more than four years later.

This Court ultimately denied Defendants' motion to dismiss on the basis of the statute of limitations, holding that the record available to it at that time did not support a finding that, as a matter of law, the statute of limitations had expired.  The Court found that by December 31, 2003, Plaintiffs were clearly on notice of potential securities fraud claims against Defendants – well more than two years before Plaintiffs filed their Complaint on February 24, 2006.  *See Micron*, 2007 WL 576468, at *5-6.  They then had a duty to conduct a reasonable inquiry "into whether Micron committed fraud in connection with the purchase or sale of Micron stock."  *Id.* at *6.  The Court cited a litany of facts to support this conclusion.  *Id.* at *5-6.

However, the Court held that inquiry notice "[b]y itself" will not trigger the statute of limitation.  *Id.* at *6.  Instead, the statute of limitations can begin only when a reasonable inquiry would have uncovered sufficient evidence so that Plaintiffs could satisfy requirement under the Private Securities Litigation Reform Act (the "Reform Act") that they allege facts supporting a strong inference that the Defendants acted with scienter.  *Id.* at *4-5.  While the Court found this to be a close question, it explained that based on the factual record at the time, it could not conclude that a reasonable investigation would have uncovered enough facts prior to February 24, 2004 to support a strong inference of scienter.  The Court thus denied Defendants' motion.

### B.      The *Merck* Case

The *Merck* case – now before the Supreme Court – involves allegations by the plaintiffs that the defendants misled investors regarding the safety of its drug Vioxx.  The district court

granted the defendants' motion to dismiss based on the statute of limitations, concluding that the plaintiffs were on inquiry notice of their potential claims more than two years before they filed suit. Specifically, the court found that a New York Times article discussing potential health risks of Vioxx warned investors that Merck's statements concerning the drug may have been misleading and triggered a duty to investigate a potential securities fraud claim. The court also held that the triggering of this duty was all that was required to trigger the statute of limitation. On appeal, the Third Circuit reversed, holding that the statute of limitations was not triggered by inquiry notice alone. Rather, evidence of scienter must also be available. *Merck*, 543 F.3d at 172.

The Third Circuit's decision in *Merck* represents the latest evidence of a circuit split on this issue. Some circuits hold that the statute of limitations begins to run from the moment there are storm warnings of possible fraud that would prompt a reasonable investor to investigate whether he has been defrauded. *See, e.g., GO Computer*, 508 F.3d at 177; *Franze v. Equitable Assurance*, 296 F.3d 1250, 1254-55 (11th Cir. 2002). Other circuits, however, hold that the statute of limitations does not begin to run until the date on which plaintiffs, after the storm warnings and through the exercise of reasonable diligence, could have discovered sufficient evidence of scienter to satisfy the Reform Act's pleading requirements. *Merck*, 543 F.3d at 172; *Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 878 (9th Cir. 2008), *petition for cert. filed,* 76 U.S.L.W. 3646 (U.S. May 27, 2008) (No. 07-1489).

The Supreme Court granted *certiorari* on May 26, 2009 to resolve this split. Specifically, the Supreme Court granted *certiorari* as to the following question: "Did the Third Circuit err in holding, . . . that under the 'inquiry notice' standard applicable to federal securities fraud claims, the statute of limitations does not begin to run until an investor receives evidence of scienter without the benefit of any investigation?" *See,* 2009 WL 133458, at *i. The parties will complete briefing by mid-November 2009, and oral argument will be heard on November 30, 2009.

## ARGUMENT

### I.      STANDARDS

It is well-established that federal district courts have the inherent authority to stay proceedings on their docket.  *See Landis v. North Am. Co.,* 299 U.S. 248, 254, (1936) (district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also Carroll v. Wilson McColl & Rasmussen*, No. CV 08-22, 2009 WL 315610, at *1 (D. Idaho Feb. 9, 2009) (quoting *Landis*).

In the Ninth Circuit, when exercising its inherent authority to stay a proceeding, a district court should consider whether the stay will enhance the efficient resolution of the case, particularly with respect to the expenditure of the resources by the Court and the parties.  *See CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962), citing *Landis,* 299 U.S. at 254-55.  The Court is also to balance the equities by considering:  (1) "the hardship or inquiry which a party may suffer in being required to go forward" and (2) "the possible damage which may result from the granting of a stay."  *Id.*  Each of these factors supports staying this action pending the Supreme Court's opinion in *Merck*.

### II.     PLAINTIFFS' LAWSUIT AGAINST DEFENDANTS SHOULD BE STAYED UNTIL THE SUPREME COURT ISSUES A DECISION IN *MERCK*

#### A.      Judicial Economy Calls for a Stay Because the Supreme Court's *Merck* Decision May Be Dispositive

The central issue in this case is identical to the issue that will be decided by the Supreme Court in *Merck, i.e.,* whether there must be evidence of scienter for the statute of limitation to begin or whether inquiry notice is enough.  Economy thus supports the entry of a stay.  *See In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001) ("It would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision that all agree will significantly impact this [] litigation."); *see Michael v. Ghee*, 325 F. Supp. 2d 829, 833 (N.D. Ohio 2004) ("It makes little sense [for the court] to undertake the herculean task of plodding

through the motions when one decision by the Supreme Court could invalidate the entire case."). There is no reason for this Court to devote its limited resources to a case when an imminent Supreme Court decision could potentially dispose of it altogether.

### B.      Plaintiffs Will Not Be Prejudiced By a Stay

Plaintiffs will suffer no undue hardship if the case is stayed.  The Supreme Court will hear oral arguments on November 30, 2009 and is expected to issue a decision no later than the end of its Term in June 2010.  Thus, the duration of the stay will be limited to approximately six months.  Given the importance of the question to be decided, this short delay clearly outweighs any advantages of proceeding with the case at this time.  *See Central Valley Chrysler-Jeep Inc. v. Witherspoon*, No. CVF 04-6663, 2007 WL 135688, at *15 (E.D. Cal. Jan. 16, 2007) ("Plaintiff's exposure to potential inequity or hardship if [the case] . . . is delayed for six months is negligible and not sufficient to warrant this court moving forward in these proceedings without the benefit of whatever simplification of the issues the Supreme Court's decision . . . may afford.")  In fact, a stay would limit any unnecessary effort and expense to Plaintiffs.  In the event that the Supreme Court rules that inquiry notice triggers the statute of limitations, Plaintiffs (and the Court) will have devoted substantial resources to a claim that cannot be pursued under the federal securities laws.

### C.      Micron Will Suffer Hardship if Required to Move Forward with Litigation

Micron has a significant interest in avoiding the unnecessary costs and burdens of defending a claim that may soon be found time-barred.  The parties are conducting extensive and costly discovery.  Micron has already produced hundreds of thousands of pages of documents. The parties are scheduling numerous additional fact depositions of Micron personnel and third parties.  Expert discovery is underway but requires significant and costly additional work. Following the close of discovery in December, the parties will begin preparing voluminous summary judgment motions on several issues, as well as other pretrial submissions.  If the Supreme Court rules that inquiry notice triggers the statute of limitations, all of this effort will have been needless.  This is a substantial burden and one that calls for a stay.

Not surprisingly, many federal courts have exercised their authority to stay proceedings where, as here, the Supreme Court is deciding an issue critical to the case. *See Michael*, 325 F. Supp. 2d at 831 (stay granted when the "case on appeal to the Supreme Court may have a dispositive effect on the instant case."); *Strait v. Specialty Equipment Companies*, No. 92 C 20318, 1992 U.S. Dist. LEXIS 19697, at *5 (N.D. Ill. Dec. 24, 1992) (motion to stay proceedings granted pending a Supreme Court decision on "precisely the same issue"); *Mississippi Band of Choctaw Indians v. State of Mississippi,* No. J90-0386, 1991 WL 255614, at *6-7 (S.D. Miss. April 9, 1991) (all proceedings stayed pending a ruling by the Supreme Court on an issue that was "directly relevant"[5]).  As these cases reflect, a stay is appropriate because the Supreme Court's decision will control the interpretation of federal law and be given full effect to pending cases in the lower courts. *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993).  This Court should adopt the same course of action, and stay this case until the Supreme Court decides *Merck*.

---

[5] *See also Ashby v. Farmers Group, Inc*., No 01-CV-1446, 2006 WL 3169381, at *1 (D. Or. Oct. 30 2006) (a stay appropriate in light of the "significance of the Supreme Court's ultimate decision to any future ruling on [this] issue"); *Flying J. Inc. v. Sprint Communs, Co*., No. 1-99-CV-111, 2006 WL 1473338, at *1 (D. Utah May 22, 2006) (same); *Doe v. Am. Nat'l Red Cross,* No. 92-645, 1992 WL 84910, at *1 (D.D.C. Apr. 9, 1992) (stay issued "given the unsettled nature of the law and the strong likelihood that the Supreme Court will resolve the issue shortly"); *Marshel v. AFW Fabric Corp*., 552 F.2d 471, 472 (2d Cir. 1977) (district court instructed stay of proceedings pending a Supreme Court decision in a closely related case that was likely to determine the question of liability).

## CONCLUSION

For the foregoing reasons, Micron respectfully requests that the Court grant the motion to stay all proceedings against Micron until the Supreme Court issues a decision in *Merck*.


Respectfully submitted,

DATED this   5th_ day of November 2009.

Lead Counsel for Defendants:

*/s/  BARRY M. KAPLAN*
_____

BARRY M. KAPLAN
DOUGLAS W. GREENE
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:      206/883-2500
Facsimile:      206/883-2699
Emails:          bkaplan@wsgr.com
                      dgreene@wsgr.com


Liaison Counsel for Defendants


*/s/  THOMAS J. LLOYD III*
_____

RICHARD H. GREENER
THOMAS J. LLOYD III
GREENER BURKE SHOEMAKER P.A.
950 W. Bannock Street, Suite 900
Boise, ID 83702
Telephone:      208/319-2600
Facsimile:      208/319-2601
Emails:          rgreener@greenerlaw.com
                      tlloyd@greenerlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of November, 2009, I electronically filed the foregoing Memorandum in Support of Motion to Stay with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Philip H. Gordon
Bruce S. Bistline
Gordon Law Offices
623 W. Hays Street
Boise, ID 83702

Patrick J. Coughlin
John K. Grant
Mary Blasy
Christopher Martin Wood
Coughlin Stoia Geller Rudman & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111

Sam Johnson
Johnson & Monteleone
405 S. 8th Street, Suite 250
Boise, ID 83702

W. Breck Seiniger
Reed Garrett Smith
Seiniger Law Offices, P.A.
942 W. Myrtle Street
Boise, ID 83702

David A. Rosenfeld
Lerach Coughlin Stoia & Robbins
200 Broadhollow Road, Suite 406
Melville, NY 11747

M. Patrick Duffin
M. Patrick Duffin, P.A.
2677 E. 17th Street, Suite 500
Idaho Falls, ID 83406

Terry M. Michaelson
Hamilton Michaelson & Hilty
P.O. Box 65
Nampa, ID 83653-0065

Seth Klein
Schatz Novel Izard, PC
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT 06103

*/s/  THOMAS J. LLOYD III*

RICHARD H. GREENER/THOMAS J. LLOYD III