J. Will Varin
VARIN WARDWELL LLC
720 W. Idaho St., Suite 21
Boise, ID 83702
(208) 991-3392 ph
(866) 717-1758 fax
willvarin@varinwardwell.com

Darrell Palmer (PHV application pending)
LAW OFFICES OF DARRELL PALMER, PC
603 N. Highway 101, Suite A
Solana Beach, CA 92075
(858) 792-5600 ph
(866) 583-8115 fax
darrell.palmer@palmerlegalteam.com

Attorneys for Objectors Orloff Fam Tr UAD 12/13/01
Marshall J Orloff & Ann S. Orloff TTEES

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re MICRON TECHNOLOGY, INC. SECURITIES LITIGATION | ) Master File No. 1:06-cv-00085-S-WFD ) |
| _____ | ) OBJECTION OF ORLOFF FAM TR ) UAD 12/13/01 MARSHALL J ORLOFF ) & ANN S. ORLOFF TTEES TO |
| This Document Relates To: | ) PROPOSED SETTLEMENT AND ) NOTICE OF INTENT TO APPEAR |
| ALL ACTIONS | ) ) DATE:  February 2, 2011 ) TIME:  9:30 a.m. |
| _____ | ) COURTROOM: Hon. William F. Downes |

## TABLE OF CONTENTS

I.      COURT MUST CRITICALLY ANALYZE THE FEE APPORTIONMENT
        AS FIDUCIARY OF THE CLASS   …………………………………………….   1

II.     THE NINTH CIRCUIT PERMITS CALCULATION OF ATTORNEYS'
        FEES AWARDS UTILIZING EITHER THE PERCENTAGE OF THE
        FUND OR LODESTAR METHOD   …………………………………………….   3

III.    25 PERCENT IS EXCESSIVE   …………………………………………….   4

        A.  An Analysis of this Case's Docket Clearly Indicates this Litigation
            was Neither Risky nor Difficult for Plaintiffs' Counsel   …………………. 7

            i.       The Result Achieved on Behalf of the Class is a Pittance
                     Compared to their Losses   ……………………………………….8

            ii.      The Risk of No Recovery Was Very Low   ………………………  9

            iii.     Difficulty of Questions Presented Was Not Significant  ………….  10

        B.  The Attorneys' Fees Incurred Are Not Sufficiently Supported or Justified  .11

        C.  The Fee Application Does Not Comply with Court Rules  ……………….  13

IV.     THESE CALIFORNIA ATTORNEYS MUST DISCLOSE ANY FEE
        SPLITTING AGREEMENTS   ………………………………………………….14

V.      OBJECTORS' ADDED VALUE TO THE CLASS   ………………………….   15

        A.  Request for Attorneys' Fees   ……………………………………………18

VI.     ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS  ……………….  19

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S. ORLOFF
TTEES TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

# TABLE OF AUTHORITIES

## CASES

Alberto v. GRMI, Inc.
252 F.R.D. 652, 663 (2008) ………………………………………………………….... 3

Blum v. Stenson
465 U.S. 886, 888 (1984) ……………………………………………………….. 4, 5

Bowling v. Pfizer, Inc.
922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996) ……………….. 17

County of Suffolk v. Long Island Lighting Co.
907 F.2d 1295, 1325-27 (2d Cir. 1990) …………………………………………….. 18

Florida v. Dunne
915 F.2d 542, 545 (9th Cir.1990) ………………………………………………….... 4

Frankenstein v. McCrory Corp.
425 F.Supp. 762, 767 (S.D.N.Y. 1977) …………………………………………….... 18

Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.
212 F.R.D. 400, 412 (E.D. Wis. 2002) …………………………………………… 16, 17

Hensley v. Eckerhart
461 U.S. 424, 437 (1983.) ………………………………………………………….... 11

Howes v. Atkins
668 F.Supp. 1021, 1027 (E.D.Ky. 1987) …………………………………………….... 18

In Re Cendant Corp. Litig.
264 F.3d 201, 231 (3rd 2001) ……………………………………………………….... 2

In re Domestic Air Transp. Antitrust Litig.
148 F.R.D. 257, 359-60 (N.D.Ga. 1993) …………………………………………….... 18

In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.
55 F.3d 768, 785 (3rd Cir. 1995) ………………………………………………….... 2

In Re Mercury Interactive Corp. Securities Litigation
618 F. 3d. 988, 993 (9th Cir. 2010.) …………………………………………….... 14

In re Microstrategy, Inc.
172 F. Supp. 2D 778, 787-88 (E.D. Va. 2001) …………………………………….... 5

In re Ventro Corporation Securities Litigation
226 F. App'x 711, 711 (9th Cir. 2007.) ……………………………………………….... 5

In re Washington Public Power Supply System Securities Litigation
19 F.3d 1291, (9th Cir. 1994.)  ……………………………………………………..  3, 4

Linney v. Cellular Alaska Pshp.
151 F.3d 1234,1242 (9th Cir.1998) …………………………………………………... 10

Mark v. Spencer
(2008) 166 Cal.App.4th 219, 225 ……………………………………………….....   14

Paul, Johnson, Alston & Hunt v. Graulty
886 F.2d 268, 272 (9th Cir.1989) ………………………………………………….... 4

Pennsylvania v. Delaware Valley Citizens' Council for Clean Air
478 U.S. 546 (1986) ………………………………………………………………….... 4

Powers v. Eichen
229 F.3d 1249, 1256 (9th Cir. 2000.) …………………………………………………..   12

Reynolds v. Beneficial Nat. Bank
288 F.3d 277, 288 (7th Cir. 2002)  ……………………………………………………... 17

Six Mexican Workers v. Arizona Citrus Growers
904 F. 2d 1301, 1311 (9th Cir. 1990) ……………………………………………….... 5

Skelton v. General Motors Corp.
860 F.2d 250, 253 (7th Cir. 1988) ……………………………………………………..... 3

Strong v. BellSouth Telecommunications, Inc.
137 F.3d 844, 849 (5th Cir. 1998) ……………………………………………………..... 1

Torrisi v. Tucson Elec. Power Co.
8 F.3d 1370, 1376 (9th Cir.1993) …………………………………………………….... 10

Vazquez v. Coast Valley Roofing, Inc.
266 F.R.D. 482, 488 (9th Cir.  2010) ……………………………………………….  9, 10

Vizcainzo v. Microsoft Corp.
290 F. 3d 1043 (9th. Cir. 2002.) …………………………………………………….. 3, 5

## STATUTES, RULES & REGULATIONS

Federal Rules of Civil Procedure
    23 ……………………………………………………………………………..   1, 12
    23(e) ……………………………………………………………………………...…2

23(e)(3) …………………………………………………………………… .. 15
23(h) …………………………………………………………………  1, 2, 9, 12

Idaho District Court Local Rule:
54.2 ……………………………………………………………….…   13
54.2(b) …………………………………………………………….…..   13

15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) …………………………………………...8

California Rules of Professional Conduct, Rule 2-200(A) ……………………………   14, 15

## SECONDARY AUTHORITY

ALBA CONTE, ATTORNEY FEE AWARDS:
2.09 ………………………………………………………………...   6
2.33 ………………………………………………………………...   6
2.34 ………………………………………………………………...   6

Private Securities Litigation Reform Act of 1995 ………………………………………..  5, 8

Exchange Act:
10-b ………………………………………………………………...   9
10-b5 ……………………………………………………………...   9
20(a) …………………………………………………………….…..9

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S. ORLOFF
TTEES TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

COMES NOW, unnamed representative Class Member ORLOFF FAM TR UAD 12/13/01 MARSHALL J. ORLOFF & ANN S. ORLOFF TTEES (Exhibit A), by and through the undersigned counsel, who hereby object to the Stipulation and Settlement Agreement dated November 18, 2010 in this matter for the following reasons, and hereby notify this Court of its intention to appear by and through the undersigned, to present argument in this matter at the Fairness Hearing currently set for February 2, 2011.  The Stipulation and Settlement Agreement should not be approved for the following reasons:

1.      Class Counsel's request for 25 percent of the Common Fund is excessive.

2.      Class Counsel has not justified the 2.7 multiplier.

3.      A common fund analysis does not support the requested multiplier.

4.      The requested fees are unreasonable.

5.      Class counsel has failed to provide sufficient evidence to support the lodestar.

## I.  COURT MUST CRITICALLY ANALYZE THE FEE APPORTIONMENT AS FIDUCIARY OF THE CLASS.

The court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and to police class action proceedings." *Strong v. BellSouth Telecommunications*, Inc., 137 F.3d 844, 849 (5th Cir. 1998).  The duty requires a review of substantive claims included in the agreement and an investigation into the manner in which fees of class counsel are to be paid and the dollar amount for such services. *Id.*  The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S.        1
ORLOFF TTEES TO PROPOSED SETTLEMENT AND NOTICE OF
INTENT TO APPEAR

measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility."  Committee Notes to Rule 23(h), 2003.

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."  A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable.  Id.  This rule has been read as a requirement for the court to " 'independently and objectively analyze the <u>evidence</u> and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.' "  *In Re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd 2001), citing *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995).  (emphasis added)

Once a settlement is reached, both Class and Defendant's counsel's interests change.  No longer vigorously advocating for their clients' interests, Class Counsel's interests are inherently conflicted with the Class as they become another claimant to the very fund that they have created for their clients.  Defense Counsel, alternatively, cares naught for the disbursement of fees to Class Counsel as payment of those fees will be deducted from the sum total that their client is already paying.  It matters little to Defense Counsel whether Class Counsel takes 2% of the fund or 50% as the result is the same for

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S. ORLOFF TTEES TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

2

their client in either scenario.  Thus, the Court necessarily becomes the fiduciary for the

fund's beneficiaries and must carefully monitor disbursement to the attorneys by

scrutinizing fee applications.  *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th

Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989.)   To

appropriately scrutinize the fee request, the district court must carefully review all of the

evidence presented to it.  *In Re Cendant* 264 F.3d at 231. (emphasis added)  Accordingly,

class counsel must support the fee request with competent and *admissible* evidence.  The

standard of admissible evidence to support a proposed settlement may be slightly less

stringent than at trial, but self-serving declarations and unauthenticated documentation is

insufficient.  See *Alberto v. GRMI, Inc.,* 252 F.R.D. 652, 663 (2008).

## II.    THE NINTH CIRCUIT PERMITS CALCULATION OF ATTORNEYS' FEES AWARDS UTILIZING EITHER THE PERCENTAGE OF THE FUND OR LODESTAR METHOD.

The District Court has discretion to use either the lodestar method or the

percentage of the fund method for calculating attorney fees in common fund cases.  *In re*

*Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, (9th Cir.

1994.)  Calculation of the lodestar represents a check on the reasonableness of the fee

calculation in a percentage of the fund case.  *Vizcainzo v. Microsoft Corp.,* 290 F. 3d

1043 (9th. Cir. 2002.)  However, the reasonableness of Plaintiffs' Counsel's fee request is

in serious doubt given a review of this lawsuit.  Therefore, the lodestar method should be

utilized instead of the percentage of the fund method of calculation.

Under the lodestar/multiplier method, the district court first calculates the

"lodestar" by multiplying the reasonable hours expended by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986). The Court may then enhance or diminish the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). Under the percentage method, the Court simply awards Class Counsel a percentage of the fund so as to provide them with a reasonable fee. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989). Whichever method the District Court employs, the Ninth Circuit has opined that "we require only that fee awards in common fund cases be reasonable under the circumstances." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir.1990). "Because a reasonable fee award is the hallmark of common fund cases, and because arbitrary, and thus unreasonable, fee awards are to be avoided, neither method should be applied in a formulaic or mechanical fashion." *In re Washington Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1295 (9th Cir. 1994.)

A calculation of the lodestar versus the 25 percent requested by Lead Counsel shows that the request is 2.71 times the reported lodestar. The result is an average hourly rate for each member of the class counsel team of $1,304.73 per billable hour – that's for lawyers and staff.

## III.   25 PERCENT IS EXCESSIVE

A percentage award "should be adjusted, or replaced ... when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers*

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S. ORLOFF TTEES TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

4

*v. Arizona Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990); *Citing Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)).  Either the lodestar or percentage method may "have its place in determining what would be reasonable compensation for creating a common fund[.]" Id.  With regard to payment of Class Counsel, the Private Securities Litigation Reform Act's (hereinafter, "PSLRA") stated goal is to ensure that Counsel is compensated for its time and effort, rewarded for the result achieved, and that the compensation provides adequate incentive for other competent class counsel to pursue similar cases in the future.  *In re Microstrategy, Inc.*, 172 F. Supp. 2D 778, 787-88 (E.D. Va. 2001).  In order to ensure that Class Counsel is rewarded for its efforts, the Ninth Circuit has at least one case suggested that 25 percent of the award in common fund cases is a starting point of the fee analysis.  The fee must be adjusted to reflect the specific circumstances of each individual case.  *In re Ventro Corporation Securities Litigation*, 226 F. App'x 711, 711 (9th Cir. 2007.)

In establishing an appropriate percentage, Courts are directed to look at a number of factors that generally fall into five categories: (1) Results obtained; (2) the risk undertaken by Lead Counsel in litigating this issue; (3) the size of the fund created and the number of persons benefitted; (4) whether the percentage of the fund requested is a reasonable market rate; and (5) how long the litigation lasts such that Class Counsel has had to forego other, similar, lawsuits.  *Viscainzo v. Microsoft Corp.*,  290, F. 3d 1043 (9th Cir. 2002.)(The Ninth Circuit further opined in *Vizcainzo* in Footnote 4, "[t]he Appendix to this opinion surveys fee awards from 34 common fund settlements of $50-200 million

from 1996-2001, with fees awarded under the percentage method. Awards here range from 3-40%, with most (27 of 34, or 79%) awards around 10-30% and a bare majority (19 of 34, or 56%) clustered in the 20-30% range. *See also* ALBA CONTE, ATTORNEY FEE AWARDS §§ 2.09, 2.33 and 2.34 (2d ed.1993 and Nov. 2001 Supp.) (surveying common fund settlements of $25-200 million and finding a range of 1-30%, with most awards around 5-20%). Id., at 1050.

In this matter, this case was a straightforward one with clear facts indicating the strong likelihood that Defendants violated Federal securities laws.  The First Amended Complaint (hereinafter, all references to the "Complaint" shall be to the First Amended Complaint unless otherwise stated) states that Micron Technology, Inc. (hereinafter, "Micron" or the "Company") "fraudulently inflated Micron's securities prices by entering into illegal price-fixing agreements with competitors in order to manipulate the price of Micron's principal product, Dynamic Random Access Memory, commonly known as DRAM. Micron's securities prices are directly impacted by changes in DRAM price levels. As a result, by illegally manipulating DRAM prices (in violation of federal antitrust laws), Micron fraudulently misled investors as to its own profitability and inflated its own stock price."  (Complaint ¶ 2.)

Thereafter the Department of Justice initiated an investigation into Micron's activities.  The Complaint states that, on "June 17, 2002, the Department of Justice issued a subpoena to Micron, demanding documents relating to contacts and communications between DRAM manufacturers regarding any discussions relating to pricing and sales of

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S. ORLOFF TTEES TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

6

DRAM chips." (Complaint ¶ 11.)  The Complaint further delineates that an

"[i]nvestigation by the federal government confirmed that the increase in DRAM prices

at the end of 2001 was the product of criminal price-fixing behavior."   (Complaint ¶ 26.)

   The Complaint later describes, inter alia, that the Company reached an agreement

with the DOJ that would forestall any criminal charges, fines, or penalties in exchange for

complying with the DOJ in its efforts to root out antitrust behavior in the DRAM

industry.  (Complaint ¶ 28.)  Therefore Counsel was aware that the DOJ had very likely

found sufficient evidence to influence the Company and the individual defendants to

comply with it's efforts.  Prior to complying with the DOJ, the Company had made

countless false statements about the health of the Company and its financials, causing

share prices to skyrocket.  (Complaint ¶¶ 30-56.)  Therefore, given the clear liability of

Micron in this litigation, compensation of 25 percent for Class Counsel is uncommonly

large.

A.   An Analysis of this Case's Docket Clearly Indicates this Litigation was Neither
     Risky nor Difficult for Plaintiffs' Counsel.

   This Case progressed as ordinarily as most securities fraud cases can be expected

to to progress.  In February 24, 2006, Plaintiffs filed their initial Complaint.  After

consolidating all similar cases alleging the same conspiracy against other Companies in

the DRAM market, a Consolidated Complaint was filed on July 24, 2006.  Thereafter, as

expected, Defendants filed a Motion to Dismiss, which Plaintiffs successfully defended.

Defendants renewed the Motion and Plaintiffs again defeated the Motion.  Plaintiffs filed

a Motion to Amend the consolidated class action complaint and subsequently did so on

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S.     7
ORLOFF TTEES TO PROPOSED SETTLEMENT AND NOTICE OF
INTENT TO APPEAR

May 25, 2007.  Plaintiffs moved to certify the Class thereafter, which the Court granted

on December 19, 2007.  In April, 2008, Defendants discovered case law that they hoped

would aid them in prevailing on a Motion for Judgment on the Pleadings.  Defendants

again, failed in their endeavor.  There were no discovery issues with Defendants, and no

unresolved disputes regarding their production.  A total of ten Depositions were taken.

Then, on November 18, 2010, a settlement was reached and the Court preliminarily

approved the proposed settlement.  In short, this case was not unusually arduous.  It was

not extraordinarily time consuming.  It was not particularly contentious.

>    i.    The Result Achieved on Behalf of the Class is a Pittance
>           Compared to their Losses.

The Notice of Pendency and Proposed Settlement of Class Action (hereinafter, the

"Notice") states on page one that the recovery per share of the common stock is

approximately $0.13 before the deduction of Court-approved fees and expenses.  If this

Court approves Counsels' request for attorneys' fees, the Class will be left with a scant

recovery $0.093 per dollar.  Reducing the multiplier by just a half point would increase

the payment to class members by more than 10%.

> "Courts discharging this responsibility have looked to a variety of factors.
> One fundamental focus is the result actually achieved for class members, a
> basic consideration in any case in which fees are sought on the basis of a
> benefit achieved for class members. The Private Securities Litigation
> Reform Act of 1995 explicitly makes this factor a cap for a fee award in
> actions to which it applies. See 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) (fee
> award should not exceed a "reasonable percentage of the amount of any
> damages and prejudgment interest actually paid to the class"). For a
> percentage approach to fee measurement, results achieved is the basic
> starting point."

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S.
ORLOFF TTEES TO PROPOSED SETTLEMENT AND NOTICE OF
INTENT TO APPEAR

8

2003 Committee Note, Rule 23(h).

Even prior to deduction of fees and costs, the settlement value at $42 million is a low return for the Class given the serious nature of the allegations against the corporation and the federal investigation by the DOJ.  The operative Complaint in this action states allegations of violations of Section 10-b of the Exchange Act, Rule 10-b5, and Section 20(a) of the Exchange Act, which resulted in losses to the institutional investors of "hundreds of millions of dollars." (Complaint ¶ 2.)  The settlement of $42 million dollars is therefore significantly less than the amount to which investors are entitled.

ii.      The Risk of No Recovery Was Very Low.

As stated above in Section III, this case was initiated after the Department of Justice began and concluded their investigation against the Company and the Company was forced to retract previously published false or misleading statements.  This alerted the Class Members and their Counsel that Micron had defrauded its investors by illegally falsifying its financials, resulting in an inflated share price throughout the Relevant Period.  Based on the facts, the risk of no recovery in this lawsuit was almost de minimis and a recovery almost totally certain.  Thus, a risk multiplier should not be utilized by the Court in analyzing the amount of fees to which the attorneys are entitled.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a district court may consider a number of factors, one of which is the strength of the Plaintiff's case. *Vazquez v. Coast Valley Roofing,* Inc., 266 F.R.D. 482, 488 (9th Cir.  2010); *Citing Linney v. Cellular Alaska Pshp*., 151 F.3d 1234,1242 (9th

Cir.1998). "[T]he court may balance and weigh different factors depending on the circumstances of each case." *Vazquez* 266 F.R.D. At 488; *Citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993).

This lawsuit was a Plaintiffs attorney's dream as the risk of no recovery in bringing this lawsuit was minimal, if present at all, as a result of the investigation by the DOJ and Micron's later-admitted complicity in the fraudulent scheme.  As there was simply very little appreciable risk in bringing this lawsuit, Class Counsel should not be entitled to a risk multiplier in the calculation of its fee award.

> iii.     Difficulty of Questions Presented Was Not Significant.

In its Motion for Attorneys' Fees and Expenses, Counsel attempts to claim that the legal issues faced by Plaintiffs in this litigation were grueling.  However, this is simply untrue.  This litigation progressed about as ordinarily as a securities fraud Class Action possibly could.  Counsel's efforts at vigorously representing their clients' interests were of the usual sort expected.  Defendants' Motion to Dismiss was based on the usual gambit of defenses presented in response to a Class Action of this nature – regarding loss and loss causation, scienter, failure to plead particularized facts showing that the statements by Defendants were false or misleading, failure to plead Control Person liability, and that their claims were time barred.  These issues are ones that are frequently raised in Motions to Dismiss by Defense Counsel and certainly were not novel or new issues to the seasoned attorneys of record in this matter.

Likewise, discovery was neither difficult nor intensive.  Although Lead Counsel

states that Plaintiffs received over 3 million pages of documents, they obviously did not

engage in extensive document review as only two project attorneys were hired to aid in

reviewing this "voluminous" production.  (See Declaration of Joy Ann Bull ¶ 6(c),

hereinafter, "Dec. Bull ¶ ___.")  Many of the documents from the DOJ's investigation

into other companies in the DRAM industry were in the public record and were readily

available to Lead Counsel.  Likewise, when Micron entered into the DOJ leniency

program, the Company was required to admit to a criminal violation of the Sherman

Antitrust Act.  This was discussed in sworn declarations to which Lead Counsel later

gained access.  (Declaration of John K. Grant ¶ 88-92, hereinafter "Dec. Grant ¶ ___.")

    In short, this was a straightforward case, aided in large part by the DOJ's previous

work investigating Micron.  Therefore, the Court should not apply any multiplier for this

matter's supposed difficulty.

B.    The Attorneys' Fees Incurred Are Not Sufficiently Supported or Justified

    Lead Counsel bears the burden of demonstrating entitlement to their fees through

documentation of its efforts in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437

(1983.)  In the instant matter, Lead Counsel has provided the Court with a bare bones

overview of what fees were incurred in this case. In addition to the overall lack of detail,

some of the fees require further inquiry.  For these reasons, even if the Court chooses to

award a percentage of the fund to Class Counsel instead of employing the lodestar

method, it should reduce the percentage below the requested 25 percent.

    Courts have discretion to inquire into the nature and source of the attorneys' fees

requested by Class Counsel in order to ascertain their appropriateness.  The Committee

Notes to Rule 23(h) in 2003 state, "courts may take account of the fees charged by class

counsel or other attorneys for representing individual claimants or objectors in the case.

In determining a fee for class counsel, the court's objective is to ensure an overall fee that

is fair for counsel and equitable within the class."  2003 Committee Notes, Rule 23.

> A district court may depart from the 25 percent benchmark for
> attorneys' fees calculations under the percentage-of-recovery approach
> in class action settlement, but if such an adjustment to the benchmark
> is warranted, it must be made clear by the district court how it arrives
> at the figure ultimately awarded; the district court need not explain its
> decision in a written order of the court, but such explanation must be
> in the record.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000.)

For example, in this matter, it appears that only two project attorneys were hired

to review the document production which purportedly totaled in the neighborhood of 3.4

million pages.  (Lead Counsel's Memorandum of Points and Authorities in Support of

Motion for Attorneys' Fees and Expenses7 page 1, ln. 10.)  Instead, according to the

Declaration of Joy Ann Bull attached to Class Counsel's Motion for Attorneys' Fees and

Expenses, Partner John Grant of Robbins Geller Rudman & Dowd, LLP conducted much

of the review himself.  (Dec. Bulll ¶ 6©.)  It appears Mr. Grant also managed the

document review attorneys.  (Dec. Bull ¶ 6(c).) While it seems obvious that some

document review was mandatory in preparation for the depositions that Mr. Grant took,

certainly a more junior attorney in the firm, one who doesn't bill out at nearly $700.00 per

hour, could have managed the small team of document review attorneys and the bulk of

the review of documents.  It appears from the Declaration of Ms. Bull that Mr. Grant was also responsible for propounding and responding to discovery requests.  (Dec. Bull ¶ 6(c).)  Mr. Grant's skills and experience seem wasted on many of the purported tasks, considering the very capable senior and junior associates at his firm, as so stated in the 89-page firm resume attached to Ms. Bull's Declaration. (Dec. Bull, Ex. A.)

In fact, Mr. Grant billed the bulk of the hours in this case; more than double what any other attorney billed; at $675/hour, his 2,809.00 hours accounted $1.8 million of the lodestar.

C.      The Fee Application Does Not Comply with Court Rules

Local Rule 54.2 of the Idaho District Court states at subpart (b) states, with respect to a motion for attorney fees, that the motion "must state the amount claimed and cite the legal authority relied on. The motion must be accompanied by an affidavit of counsel setting forth the following: (1) date(s), (2) service(s) rendered, (3) hourly rate, (4) hours expended, (5) a statement of attorney fee contract with the client, and (6) information, where appropriate, as to other factors which might assist the Court in determining the dollar amount of fee to be allowed. Motions for attorney fees and cost bills must be filed as separate documents. Failure to comply with this requirement will result in delay in processing."  Idaho District Court Local Rule 54.2(b), 2011.  It is Class Counsel's burden to provide the Court and Class with the "opportunity thoroughly to examine counsel's fee motion, inquire into bases for various charges and ensure that they are adequately documented and supported is essential for protection of rights of class

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S.       13
ORLOFF TTEES TO PROPOSED SETTLEMENT AND NOTICE OF
INTENT TO APPEAR

members, and it ensures that district court, acting as fiduciary for class, is presented with

adequate, and adequately-tested, information to evaluate reasonableness of proposed fee."

*In Re Mercury Interactive Corp. Securities Litigation*, 618 F. 3d. 988, 993 (9th Cir.

2010.)

No billing records have been submitted.  The only details provided are overviews

of the travel expenses (although no dollar value is attached), total numbers of hours

worked by the attorneys and their billable rate, and a listing of the expenses incurred.

This provides the Class with no idea of how they were billed or who was working on

their case and on which projects.  The Court is likewise in the dark.

## IV.   THESE CALIFORNIA ATTORNEYS MUST DISCLOSE ANY FEE SPLITTING AGREEMENTS

There is a clear mandate under California Rules of Professional Conduct, Rule 2-

200(A) to that class counsel should produce all fee-splitting agreements among class

counsel, to the extent there are any.  Several conflicts are inherent in fee-splitting, of

which the client has a right to be aware.  *Mark v. Spencer* (2008) 166 Cal.App.4th 219,

225:

> [A] potential conflict concerns the attorneys' tactical decisions in the litigation.
> For example, is one attorney subject to an agreement to split fees equally
> discovers he or she is spending far more time on the case than co-counsel, the
> attorney may push for an early settlement to stem the losses.  Conversely, an
> attorney spending less time on the case may wish to drag the litigation out,
> knowing he or she will eventually recover fees disproportionately larger than
> those actually incurred.

For this reason, Rule 2-200(A) provides that: "A member shall not divide a fee for legal

services with a lawyer who is not a partner of, associate of, or shareholder with the

member unless:  (1) The client has consented in writing thereto after a full disclosure **has**

**been made in writing that a division of fees will be made and the terms of such division."** (Emphasis added.)

Apart from mandatory disclosure of all fee-splitting agreements under the Rules of Professional Conduct, FRCP rule 23(e)(3) requires the disclosure of all fee agreements touching class actions; "the parties seeking approval of a class action settlement must file a statement identifying any agreement made in connection with the proposal." This language is mandatory, requiring production of all fee agreements regarding sharing fees with clients, incentive promises to clients, splitting fees with co-counsel, and any other financial arrangement touching the class action.

The mandatory nature of this Rule is hearkens back to the conflicts between class counsel and their clients and is aimed at protecting class members from potential conflicts of interest with their attorneys by requiring the full disclosure of all fee agreements in any application for dismissal or settlement of a class action. If lawyers in firms other than those listed in the lodestar calculations, are receiving fees, such arrangements must be disclosed. The settlement funds are the property of the class members and its distribution must be transparent.

## V. OBJECTORS' ADDED VALUE TO THE CLASS.

In their zeal to win approval of an agreement, professional class counsel and professional defense counsel often overlook or deny the importance of objectors to the class-action process. Indeed, professional class counsel and professional defense counsel may even denounce objectors' counsel as "serial objectors," or use some other pejorative epithet. However, settlements, such as this one, can be so complicated that only lawyers who have participated in many class action lawsuits can provide insightful and useful

analysis, thoughtful alternatives, and a context within which to identify flaws or oversights in a settlement, and thereby assist a court in fulfilling its duty to examine the settlement as an independent and impartial neutral.

Thus, objectors provide great value to the class action process. Without resolving the issues described above, the Settlement could become a complete sham and no one would be the wiser. The judicial system would have failed Class Members by requiring no mechanism for assuring that the agreed relief is ever received by the persons who should benefit. The foregoing observations are submitted to improve the Settlement, and thereafter to guarantee it will work, and to show when and how well it is completed. These improvements are developed only now because objectors offer the last opportunity to preserve the adversary process which is necessary to test the fairness of a proposed settlement.

"It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . .   It is impossible for a class to select, retain or monitor its lawyers as an individual client would." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002). "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." Id. "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative." Id.

"Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally." *Great Neck*, 212 F.R.D. at 412. "From conflicting points of view come clearer thinking." *Id.* at 412-13. "Therefore, a lawyer for an objector who

raises pertinent questions about the terms or effects, intended or unintended, of a

proposed settlement renders an important service."  *Id.* at 413.

The value of objectors is even acknowledged by attorney Melvyn Weiss, one of

the nation's most well-known (and formerly revered) class action attorneys, who stated:

"Objectors are part of the class action system and, though they may be irritating from

time to time, the system's been working effectively.  If objectors can come in and

negotiate a benefit, that's great.  I'm not going to criticize one of the safeguards [of the

class action process].  The objectors act as a check and balance to the whole procedure."

See, "Objectors to class action settlements:  Watchdogs or scum of the earth?" by Joe

Frey, *Insure.com* website, March 23, 2000.

"The law generally does not allow good Samaritans to claim a legally enforceable

reward for their deeds."  *Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 288 (7th Cir.

2002) (Posner, C.J.).  Judge Posner characterized Objectors as "volunteer lawyers for the

class."  He also approved the concept of awarding a fee to the objecting counsel because

"[i]t is desirable to have as broad a range of participants in the fairness  hearing as

possible because of the risk of collusion over attorneys' fees  and the terms of the

settlement generally." Id.

In other cases, objectors' counsel have been recognized where their efforts have

augmented the common fund or otherwise improved a class action settlement.  See, e.g.,

*Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir.

1996); *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. 257, 359-60 (N.D.Ga.

1993).  Indeed, even in cases where objectors appeared but the settlement terms were not

altered, courts have recognized their value in that their presence improved the process

and assisted the court in its scrutiny of the settlement.  *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2d Cir. 1990); *Howes v. Atkins*, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987); *Frankenstein v. McCrory Corp.,* 425 F.Supp. 762, 767 (S.D.N.Y. 1977); *see also Domestic Air*, 148 F.R.D. at 359.  And the Committee Notes to Rule 23(h) expressly states the benefit that objectors may bring to a case:

> "In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other situations in which fee awards are authorized by law or by agreement of the parties may exist."
> 2003 Committee Note, Rule 23(h).

A.      Request for Attorneys' Fees.

Based on the foregoing, these Objectors wish to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the Proposed Settlement, identifying problems with the Proposed Settlement, and presenting substantial and workable solutions.

Just as objectors' counsel should be encouraged to assist the class-action process, so should individual class members be encouraged to participate.  Accordingly, an incentive award is appropriate for Objectors herein for its willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

///

OBJECTION OF ORLOFF FAM TR UAD 12/13/01 MARSHALL J ORLOFF AND ANN S. ORLOFF TTEES TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

18

## VI.    ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS.

These Objectors join in and adopt all well-taken, good-faith objections filed by other Class Members in this case and incorporates them by reference as if they appeared in full herein.

**WHEREFORE**, This Objector respectfully requests that this Court:

A.     Upon proper hearing, sustain these Objections;

B.     Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

C.     Continue the Fairness Hearing until such time that this Objector has had an opportunity to review Class Counsel's Fee Application; and

D.     Award an incentive fee to this Objector for its service as a named representative of Class Members in this litigation.


Dated: January 19, 2011                    Varin Wardwell, LLC

                                           By:  /s/ J. Will Varin                
                                           Attorney for Objectors

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2011, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the District of Idaho by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system, to wit:

Joy Ann Bull
Robbins Geller Rudman & Dowd LLP
Email: joyb@rgrdlaw.com

David Lansky
Wilson Sonsini Goodrich & Rosati, P.C.
Email: dlansky@wsgr.com


\_\_\_\_/s/ J. Will Varin_____
Darrell Palmer
Attorney for Objectors