# United States District Court
## For The District of Idaho

| | | |
|---|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, et. al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. 06-CV-85-WFD |
| MICRON TECHNOLOGY, INC., et. al. | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER APPROVING CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR ATTORNEY FEES**

This matter comes before the Court on Lead Plaintiff's motion for final approval of the settlement reached on behalf of the Class and motion for award of attorney fees and expenses. (ECF 170.) After reviewing the Lead Plaintiff's memoranda and supporting affidavit testimony, considering objections to the settlement, and hearing oral argument, the Court FINDS and ORDERS as follows:

**BACKGROUND**

Micron Technology, Inc. is an Idaho-based corporation that manufactures Dynamic Random Access Memory (DRAM) cards and other, similar products. This litigation arose following the Department of Justice's investigation of Micron for engaging in a criminal price-fixing conspiracy. Lead Plaintiffs allege that during the course of the scheme Micron made

material misrepresentations to investors designed to hide its criminal activity. In 2006, investors initiated this litigation by filing complaints alleging Micron committed securities fraud in violation of 15 U.S.C. §§ 78j and 78t and 17 C.F.R. § 240.10b-5 (Rule 10b-5).

In 2010, Lead Plaintiff and Micron agreed to settle this litigation for $42 million. The funds are currently held in escrow as a common fund. The proposed allocation plan calls for these funds to be distributed to the Class based on the type of stock held, when the stock was purchased, and when the stock was sold. (See Ex. A-1, ECF 166.) The Class is defined as those individuals who purchased publicly-traded Micron stock between February 24, 2001 and September 18, 2002. Lead Plaintiff alleges that the price-fixing scheme occurred during this time period.

Lead Counsel asks the Court to award them twenty-five percent of the common fund ($10.5 million) as attorney fees and over $1.2 million in fees and expenses. In common fund cases within the Ninth Circuit, twenty-five percent is a standard starting point for determining reasonable attorney fees under the percentage of the common fund approach. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1998)). According to the declaration of John Grant, Lead Counsel took this case on a contingency basis and has received no attorney fees in the four years it litigated this case.

There are two objectors among the Class. The first, Michael Feldman, is an unrepresented

Class member who objects to the proposed method of allocation. Specifically, he argues that the allocation agreement should allow recovery for all investors who purchased securities during the class period, regardless of when they sold those securities. Mr. Feldman purchased Micron stock in thirty-two separate transactions initiated after February 24, 2001, but sold all of that stock prior to June 18, 2002.

Lead Plaintiff responds to Mr. Feldman's argument by explaining that its experts have concluded that the price-fixing scheme caused Micron's stock price to be artificially inflated at a constant amount between February 24, 2001 and June 18, 2002. Thus, any investor who purchased and sold securities during that time paid too much for the stock but also received to much for the stock. Investors like Mr. Feldman suffered no damages.

The second objector, the Orloff Family Trust, does not object to the terms of the proposed settlement or the allocation plans, but only to Lead Counsel's request for attorney fees.[1] The Orloff Trust argues that twenty-five percent of the common fund is excessive. It asserts that the case was relatively straight forward and easy to prove because Micron had admitted to the criminal price-fixing scheme. It also argues that the proposed amount is excessive because $42 million is a poor result for the Class and Lead Counsel should not be rewarded for doing a poor job. Finally, the Orloff Trust trumpets its role in ensuring the Court gave proper consideration to Lead Plaintiff's motion for final approval and asks to be rewarded with attorney fees.

[1] The objector's brief is titled as an objection to both the proposed settlement and the request for attorney fees, but the brief does not address the merits of the settlement.

Lead Counsel responds to the Orloff Trust largely by reiterating its argument in support of the award. Specifically, they cite a Third Circuit Court of Appeals case for the proposition that the requested fee award is presumptively reasonable because Lead Plaintiff approved it. Lead Counsel further argues that a twenty-five percent award is standard within the Ninth Circuit, is justified in this case, and is appropriate in light of the risk the Class would recover nothing.[2]

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23(e)(2) requires judicial approval of any settlement proposed by a certified class. A court must ensure the settlement is "fair, reasonable, and adequate" by independently evaluating the settlement. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009). The following factors are relevant: (1) the strength of the Class's case, (2) the complexity of the case and risk and expense of further litigation; (3) the risk of losing class status; (4) the amount of the settlement; (5) extent of discovery completed; (6) experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of Class members. *Id.*[3]

---

[2] Lead Counsel also makes two arguments at the end of its brief that attack the character of the Orloff Trust's attorney of record. In its surreply the Orloff Trust responds to those arguments by denigrating Lead Counsel. These arguments have no place in this discussion.

[3] Plaintiffs cite *Hughes v. Microsoft Corp.*, 2001 WL 34089697 (W.D. Wash. 2001) (unreported), for the proposition that there is a strong presumption a proposed settlement is fair if it is the result of arms-length bargaining and receives the recommendation of experienced class counsel. To the extent Lead Plaintiff used the term "presumption" interchangeably with "inference," the Court agrees and gives these factors their proper weight. To the extent Lead Plaintiff suggest there is a rule that gives rise to a rebuttable presumption, the Court disagrees. As

In the Ninth Circuit, attorney fees in class action cases must be "reasonable in the circumstances." *Id.* at 967. Courts consider all relevant factors, including but not limited to the results achieved by class counsel, the risk of losing on the merits had the case proceeded to trial, the complexity of the case, and class reaction to the requested award. "At the fee-setting stage when fees are to come out of the settlement fund, the district court has a fiduciary role for the class." *Id.* At 968.

## DISCUSSION

### Fairness of the Proposed Settlement

*Strength of Plaintiffs' Case*

In evaluating the strength of Plaintiffs' case, the Court "is not required to 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute.'" *Rodriguez*, 563 F.3d at 964 (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). A careful consideration of the underlying facts and law is, however, relevant to whether Plaintiffs would have had difficulty proving their case had they proceeded to trial.

Here, the Class faced at least two significant obstacles to prevailing on the merits of its Rule 10b-5 claim had this case proceeded to trial. First, it would likely have had difficulty proving loss causation and damages. Plaintiffs alleged two sources of damages. The first

---

far as the Court can tell, no such rule has been adopted by the Ninth Circuit Court of Appeals.

involved artificial inflation of Micron stock price caused by Micron's manipulation of DRAM prices. To prove the amount of these losses Plaintiffs would have to distinguish between movements in Micron stock caused by the artificial inflation and those caused by external market forces. This would necessitate a detailed examination of the competitiveness of the DRAM market and the over-the-counter stock market. Proving the exact amount of these losses would have been further complicated by the fact that Plaintiffs alleged that the efficiency of Micron's price manipulation varied throughout the class period. It would be very difficult to determine the exact amount of damages caused by the price-fixing scheme.

The second source of alleged losses was the drop in Micron's stock price caused by the Department of Justice's public announcement of its investigation. Proving that Micron proximately caused these losses would require evidence that market's reaction to the Department of Justice announcements was to accurately adjust the price of Micron stock from its inflated value to its actual worth. Because the market is not perfectly efficient, Plaintiffs would have had to determine what portion of the price decline was an adjustment to Micron's real value and what portion was merely a reaction to the Department of Justice's announcements (or other market events). This would have been difficult even if the Plaintiffs' evidence was unopposed, but the damages portion of trial would have been a battle of experts. While that may not be unusual, it does increase the risk of proceeding to trial.

The second significant obstacle to Plaintiffs' recovery was a statue of limitations

problem. Private rights of action involving claims of securities fraud must be brought within two years after the discovery of the facts constituting the violation. 28 U.S.C. § 1658(b)(1). At the time the parties reached an agreement-in-principle to settle this dispute, the question of whether that period of limitations began to run upon actual discovery or inquiry notice was before the Supreme Court in *Merck & Co. v. Johnson*, 130 S. Ct. 1784, 1790 (2010). There was a question in this case whether a December, 2003 newspaper article put Plaintiffs on inquiry notice of Micron's price-fixing scheme. Had the Supreme Court's decision been unfavorable to the Class, Plaintiffs could have found their claims time-barred.[4]

Finally, nothing in the record suggests that the Department of Justice's price-fixing investigation would have enabled Plaintiffs to ride the Government's coattails to victory. Indeed, Plaintiffs attempted to obtain depositions and other information from the Government and were rebuffed. Their motion to compel in the District Court for the District of Columbia was denied. *In re Micron Securities Litigation*, 264 F.R.D. 7, 10-11 (D.D.C. 2010). Difficulty of proof, the existence of substantive and procedural defenses, and the lack of government assistance all weigh in favor of finding the settlement fair. *Rodriguez*, 563 F.3d 964.

*Risk, Expense, and Duration of Further Litigation*

The risk, expense and duration of further litigation also favor finding the settlement fair.

---

[4] In fact, the Supreme Court held that the statute of limitations does not begin to run until the plaintiff has actual knowledge of the fraud or would have discovered it through reasonable diligence. *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1796 (2010).

While much of the discovery was complete at the time of settlement, significant hurdles remained. Plaintiffs faced a motion for summary judgment, *Daubert* motions, and inevitable appeals in the event they prevailed. These factors favor the settlement. *Id.* at 966 (noting that pending motion for summary judgment, expected *Daubert* motions, and potential appeals favored affirming approval of the settlement).

*Risk of Maintaining Class Status*

Plaintiffs argue that they could have lost their Class status had the litigation gone forward. In granting Class status, the Court held that Plaintiffs had met their threshold burden of demonstrating that the market was efficient with respect to Micron stock and that the fraud-on-the-market doctrine applied. Yet the Court expressly left open the possibility that discovery would reveal facts contradicting the Plaintiffs' showing of efficiency, thus allowing Micron to renew its challenge to class certification. Moreover, a court can decertify a class at any time. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). To the extent this factor is relevant, it favors approval of the settlement.

*The Amount of the Settlement*

The proposed settlement is for $42 million in cash considerations. In evaluating the amount of a proposed settlement, courts in the Ninth Circuit have "long deferred to the private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965. This is because parties, counsel, and mediators "naturally arrive at a reasonable range for settlement by considering the likelihood

of a plaintiffs' or defense verdict, the potential recovery, and the changes of obtaining it, discounted to present value." *Id.* A court's evaluation of the settlement amount "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties," and that the settlement as a whole is fair and reasonable. *Officers for Justice*, 688 F.2d at 625.

Lead Plaintiff indicates that the settlement in this case was reached after extensive arms-length negotiation between counsel experienced in litigating class action securities cases. The Honorable Judge Daniel Weinstein (Ret.) of the well-respected national ADR service provider JAMS held three full-day mediation sessions in this case and actively encouraged and facilitated settlement dialogue. Judge Weinstein has extensive experience in mediating class-action cases. *Rodriguez*, 563 F.3d at 956. The Court has found nothing in the record to suggest the settlement was the product of overreaching, collusion, or fraud between the negotiating parties. There is no reason to doubt that the settlement amount is born of the experienced parties' reasoned evaluation of the case.

That the settlement amount is small compared to the Plaintiffs' estimation of total damages, alone, is not reason for the Court to reject the proposed settlement. By their nature, settlements occur when a plaintiff is willing to receive less than it could obtain were all issues and disputes resolved in its favor. Additionally, the proposed settlement is in cash, "which is a good indicator of a beneficial settlement." *Rodriguez*, 563 F.3d at 965. This factor weighs in

favor of approving the settlement.

*The Extent of Discovery Completed and Understanding of Strengths and Weaknesses*

It appears that Plaintiffs conducted extensive discovery in this case, certainly sufficient discovery to allow for a complete understanding of the strengths and weakness of their case. Plaintiffs conducted depositions, reviewed over 3.4 million pages of documents, and conducted extensive third-party discovery relating to the Government's antitrust case against Micron. Plaintiffs retained experts who conducted event studies and prepared expert reports. Further, there is no dispute the attorneys in this case have considerable experience litigating class-action securities cases and handling complex civil litigation. As the Ninth Circuit has recognized, parties represented by experienced counsel are better suited than the Court to evaluate the merits of their case and, therefore, better positioned than the Court to produce a settlement that fairly reflects each party's expected outcome. *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373,m 378 (9th Cir. 1995)). This factor weighs in favor of approval.

*Reaction of the Class Members*

The only class member to object to the proposed settlement is Michael Feldman, who objects that class members who purchased Micron stock after February 24, 2001 but sold that stock before June 18, 2002, will not receive settlement benefits.

As Lead Plaintiff explained in its brief, Mr. Feldman and similarly situated investors do not receive settlement benefits because the alleged inflation in Micron stock price apparently

remained constant from February 24, 2001 to June 18, 2002. Investors who purchased and sold stock during that time frame were therefore not damaged. While those investors may have, like Mr. Feldman, lost money on their investments, those losses are not attributable to Micron's alleged fraud. The Court has found nothing in the record on which to doubt Lead Plaintiff's conclusion that the alleged inflation remained constant and finds Mr. Feldman's objection to be substantially without merit.

More importantly, the fact that only one class member objected to the fairness of the proposed settlement weighs heavily in favor of approval. A declaration attached to Lead Plaintiff's motion for approval indicates that the Class's third-party claims administrator prepared and mailed over 294,000 claim packages to potential class members. Only one objected. This indicates overwhelming approval of the settlement by class members. *See, e.g., Rodriguez*, 563 F.3d at 967 (upholding district court's finding that fifty-four objections from a class with 376,301 putative members was a favorable reaction); *Curchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (affirming approval of class action settlement where forty-five objections were received out of 90,000 notices).

*Conclusion*

All of the factors discussed above weigh in favor of approval. Only one class member objected, and his objection was without substantial merit. The settlement is the product of arms-length negotiation among experienced attorneys and nothing in the record suggests the settlement

is the product of fraud, collusion, or overreaching. Accordingly, Lead Plaintiff's Motion for Settlement is GRANTED and the proposed settlement is APPROVED.

**Attorney Fees**

The Orloff Trust objects to Lead Counsel's request for attorney fees and asks the Court to award it a portion of the settlement fund. The thrust of the Orloff Trust's objection is that the request for twenty-five percent is excessive and unsupported by admissible evidence.

*Whether Twenty-Five Percent is Excessive*

The Orloff Trust argues that the award is excessive because, it its view, the settlement amount is relatively small compared to the Plaintiffs' estimate of total damages and because the case was easy. The Court addressed these arguments above. There is no evidence the amount of the settlement is the product of fraud or collusion and the Court will not discard the reasoned recommendation of experienced counsel on a single objector's conclusory and unsubstantiated claim the settlement fund is too small. Additionally, the case was complex and challenging. It involved unsettled issues of law (statute of limitations) and difficult questions of fact (damages).

The Orloff Trust's objections are grounded in the assumption that Plaintiffs could rely on evidence already developed by the Department of Justice. Yet the Plaintiffs' efforts to obtain information from the Department of Justice were unsuccessful. Plaintiffs litigated the issue in the District Court for the District of Columbia, which eventually found that the Department of Justice's investigatory privilege allowed them to withhold the evidence sought by Plaintiffs. *In re*

*Micron Securities Litigation*, 264 F.R.D. 7, 10-11 (D.D.C. 2010).

*Admissibility of Evidence*

The Orloff Trust's second objection to the requested fee award is that it is unsupported by admissible evidence. The trust asserts that affidavit testimony submitted by Lead Counsel is self-serving, inadmissible hearsay. It also argues that the declarations concerning fees and expenses are summary and unsupported by evidence on which the Court can make a reasoned evaluation of the request.

During the fairness hearing held in this matter, the Court heard the Orloff Trust's arguments regarding the adequacy of supporting information. Lead Counsel was ordered to submit more detailed billing records, which the Orloff Trust indicated would likely be sufficient to alleviate its objections. Lead Counsel complied with this order and submitted a thorough and detailed declaration containing extensive billing records. Having reviewed that submission, the Court finds that Lead Counsel's request for attorney fees is supported by adequate reliable evidence. Though it is unusual to see a firm devote a senior partner's time to document review and case law research, the Court has no reason to second guess how the firm uses its resources. This case was taken on a contingency fee basis, not on an hourly basis.[5]

---

[5] The Orloff Trust also argued that Lead Counsel has a duty under the California Rules of Professional Conduct to disclose any fee agreements to class members. There has been no suggestion Lead Counsel failed to comply with this requirement.

*Reasonableness of the Requested Fee*

Fee requests must be reasonable under the circumstances. *Rodriguez*, 563 F.3d at 967. Many of the factors relied upon by courts in determining whether a requested percentage is reasonable are also used to determine whether the settlement is fair. For example, the achievements of class counsel, the risk of losing on the merits, the experience of counsel, and the existence of a governmental actor are all relevant. *See Rodriguez*, 563 F.3d at 967 (discussing those factors in context of fee award). The Court has addressed those factors. The risk the Plaintiffs would fail on the merits was not insignificant. They also faced issues of proof with respect to damages. Lead Counsel and defense counsel were are well-qualified and possess substantial experience litigating these cases. Government assistance was unavailable.

The Court finds that three additional facts support the requested award. First, Lead Counsel litigated this case on a pure contingent fee basis. Of course, attorneys who take a case on a contingent basis, and the plaintiffs who hire them, understand it is possible for the attorney to receive a fee exceeding the amount the attorney would have billed under a standard fee agreement. In this case, Lead Counsel expended a significant amount of resources and litigated this case for four years without compensation. Second, the twenty-five percent requested is in line with both the standard practice of this Circuit and this Court's experience. Within the Ninth Circuit, a twenty-five percent award is the benchmark. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73. The Orloff Trust has not given the Court reason to depart from

benchmark.

Finally, a "lode-star cross check" confirms that the requested fee award is reasonable. Here the lodestar is $3,864,766.50. To equate that with the requested $10.5 million, the Court would be required to award a multiplier of 2.72. A multiplier of this amount is relatively standard. *See Vizcaino*, 290 F.3d at 1051 n.6 (affirming application of a 3.65 multiplier and noting that in a majority of common fund cases courts award a multiplier between 1.0 and 3.0). Courts have "routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" in which lead counsel took the case on a contingent fee basis. *Id.* (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994). This mirrors the established practice in the private legal market of rewarding attorneys for risking non-payment with compensation in excess of their hourly rate. *Id.* Indeed, it is understood in common fund cases that attorneys have to make up for lack of compensation in cases they lose with premium compensation in cases they win. *Id.*

*Objector's Request for Attorney Fees*

In the Ninth Circuit, a district court has discretion to award objectors attorney fees if the objectors increase the common fund or substantially benefit the class members. *Rodriguez*, 563 F.3d at 963 (citing *Vizcaino*, 290 F.3d at 1051-52 (applying Washington law)).

Here, the Court finds that the Orloff Trust's objections did not increase the common fund or substantially benefit the class members. The only benefit provided by the Orloff Trust's

objection was that it led to the Court obtaining more detailed records of the lodestar. While the additional information confirmed Lead Counsel's original representations regarding attorney fees, it neither altered the total mix of information available to the Court or added anything significant to the Court's analysis. It did not confer a benefit on class members. Accordingly, the Court concludes that an award of attorney fees to the Orloff Trust would be unreasonable under the facts of this case. Its motion for an award is DENIED.

*Conclusion*

Lead Counsel's request for attorney fees is reasonable under the circumstances. Its motion for attorney fees is GRANTED.

## CONCLUSION

The Court finds that the proposed class action settlement is fair, reasonable, and adequate. It further finds that Lead Counsel's request for attorney fees and costs to be reasonable under the circumstances. Finally, it finds that the Orloff Trust's objection did not substantially enhance the benefit to the class and that its request for attorney fees is unreasonable.

THEREFORE, Plaintiffs' motion for final approval of the class action settlement and motion for attorney fees, (ECF 170), is GRANTED in its entirety. The Orloff Trust's request for attorney fees from the common fund is DENIED.

IT IS SO ORDERED.

DATED this 28th day of April, 2011.

United States District Judge